UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-22728-Civ-Scola

SEOUL SEMICONDUCTOR CO., LTD.

        Plaintiff,

   v.

CRAIG ELECTRONICS, INC.,

        Defendant.

## ENPLAS DISPLAY DEVICE CORPORATION'S MOTION TO INTERVENE AS A DEFENDANT UNDER FED. R. CIV. P. RULE 24 AND PARTIAL STAY AND INCORPORATED MEMORANDUM OF LAW

Enplas Display Device Corporation ("Enplas"), by and through its undersigned counsel, hereby moves this Court to intervene as a defendant in this action as of right under Fed. R. Civ. P. 24(a)(2). Alternatively, Enplas moves this Court to intervene with permission under Fed. R. Civ. P. 24(b). Enplas further moves this Court to stay this litigation with respect to the question of infringement of United States Patent Nos. 6,007,209 ("the '209 patent") and 6,473,554 ("the '554 patent"). Alternatively, should the case not be stayed, Enplas further moves this Court for leave to file an Answer to plaintiff's Complaint. As grounds for this Motion, Enplas states as follows:

## I.    Introduction

Plaintiff Seoul Semiconductor Co., Ltd. ("SSC") was not content to assert that lens products manufactured by movant Enplas infringed the '209 patent and the '554 patent before one district court judge. Instead, just three months after claiming that Enplas infringed the '209 and

1

'554 patents in the Northern District of California,[1] SSC asserted that lens products manufactured by Enplas infringed the same two patents in this lawsuit against Craig Electronics, Inc. ("Craig").

SSC never disclosed its duplicate litigation to Enplas, to Craig, or to either Court. Only after *Craig* recently provided SSC's infringement contentions to Enplas' counsel, did it become apparent that SSC is asserting that Enplas lens products infringe the same two patents before two different courts. Indeed, the infringement contentions served by SSC in this litigation are nearly identical to the contentions served in the first-filed California Litigation.

Because SSC is asserting the same two patents against Enplas products in two different courts, Enplas is now moving to intervene and to stay SSC's claims of infringement of the '209 and '554 patents. Enplas has a significant interest in defending SSC's claims on these two patents: not only are Enplas' lens products squarely at issue in both cases, but defendant Craig has no direct knowledge of how Enplas' products operate or of their structure. Allowing Enplas to intervene will, moreover, promote the just, speedy, and efficient resolution of this litigation, as complete technical information about the accused products will become readily available to Craig and to the Court.

Moreover, there is no prejudice to SSC since it will continue to have a full opportunity to address the issues in the first-filed California Litigation and will not face the risk of inconsistent rulings. For example, claim construction has already been briefed, argued, and is currently *sub judice* before the California court. Indeed, SSC should not be heard to complain about intervention by Enplas or the requested stay – SSC is, after all, the litigant that surreptitiously attempted to engage two district courts in the same complicated patent claims, apparently hoping to increase its

---

[1]    *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, C.A. No. 3:13-cv-05038-NC (N.D. Cal.)[hereinafter the California Litigation].

chances of success and/or to unfairly take advantage of Craig in this case, a much weaker opponent that SSC clearly recognizes is unable to effectively defend against SSC's claims.

## II.    Statement of Facts
### A.    The Parties.

Enplas is a Japanese company that manufactures, among other things, its patented precision lenses for use with light-emitting diodes ("LEDs").  Enplas manufactures all of its products outside of the United States and, indeed, does not sell or offer its products for sale in the United States. Enplas' direct and indirect customers combine these lenses with LEDs, once again doing so outside of the United States, and its customers' customers as well as other downstream entities, in turn, incorporate the LEDs and lenses into various backlighting products, which are then incorporated into products like the televisions at issue in this litigation.  Because there are several degrees of separation between Enplas and the final product and typically the actual sellers, Enplas often has no knowledge of what retail products include its lenses or even into which country those products are sold.

SSC is a manufacturer of LEDs and is a former Enplas lens customer, their long relationship having been terminated during the pendency of the California Litigation.

On information and belief, Craig is a reseller of electronics products including the accused television products.

### B.    The California Litigation.

In September 2013, SSC accused Enplas of infringing the '209 and '554 patents.  Enplas responded to SSC's threats with the filing of a complaint in the Northern District of California on October 29, 2013, seeking a declaration that the claims of the '209 and '554 patents are not infringed and are invalid.  SSC filed counterclaims of infringement of the same two patents on April 21, 2014.  SSC's counterclaims describe the accused products as "Enplas lenses for use with

LEDs, including lenses for use in LED backlights for LCD televisions and monitors."  (Ex. A, ¶¶ 36-37, 51-52).

SSC first served infringement contentions for the '554 patent on June 4, 2014, with the contentions focusing solely on Enplas' LED lenses.  (*See* Ex. B at 4).  SSC's infringement contentions for the '209 patent (also served on June 4, 2014) accuse "BLUs [backlight units], LCDs [liquid crystal displays], and LCD televisions and monitors that contain one or more LEDs and one or more **Accused Enplas Lenses**."  (*See* Ex. B at 4 (emphasis added)).

## C.    SSC's Florida Actions.

Over one month after serving its infringement contentions in the California Litigation, SSC filed two complaints in this district asserting the same two patents asserted against Enplas, along with three other patents.  SSC accused Craig of infringing the '554 and '209 patents by importing, selling, or offering to sell LED televisions incorporating, *inter alia*, Enplas LED lenses.  (*See*, *e.g.*, ECF No. 1, ¶¶ 39-59 (asserting infringement based on "using, offering for sale and selling in the United States, and by importing into the United States, without authority, products, including without limitation the Craig CLC512E LED television.")).[2]  ***SSC never informed Craig or this Court*** of the existence of the California Litigation, despite accusing Enplas lenses of infringing the same '209 and '554 patents in both cases.  Instead, when SSC filed its notice of related actions pursuant to Local Rule 3.8, it mentioned only the other case it had filed in this district against Curtis International, while remaining silent with respect to the California Litigation.  (ECF No. 11).

_____

[2]    The second SSC complaint was filed against Curtis International Ltd. (C.A. No. 1:14-cv-22729-CMA), which case was recently transferred to the United States District Court for the Central District of California (C.A. No. 2:14-cv-09466-ODW-VBK).  The accused products in the Curtis case ***do not*** appear to include Enplas lenses.

This case is in early fact discovery.  SSC served on Craig (but did not publicly file) infringement contentions in November 2014.  Like SSC's contentions in the earlier-filed California Litigation against Enplas, SSC's infringement contentions for the '209 and the '554 patents in this action focus on the use of the Enplas lenses.  (Exs. C, F, H).  Under the current Scheduling Order in this case, the parties' briefing about the proper construction of SSC's patent claims is not scheduled to commence until May of this year (ECF No. 30 at 2), in contrast to the California Litigation, where the Court has already heard oral argument on this subject.  (Ex. D at 15).

**D.    The Enplas Lenses in Craig's Televisions.**

Craig does not purchase lenses from Enplas; instead, Enplas sells its lenses to companies that incorporate the lenses into assemblies that are in turn incorporated into displays, which are finally incorporated – often by yet another company – into the televisions ultimately sold by Craig. The lenses are difficult-to-access components contained within the interior of the accused televisions.  Companies such as Craig often do not know (nor do they need to know) about the existence of the lenses, much less the lens manufacturers' identity.  Similarly, lens manufacturer Enplas does not know (nor does it need to know) the ultimate reseller's identity or even the products into which its lenses are ultimately incorporated.

Enplas only learned that SSC was accusing Enplas products of infringement in this Court on January 22, 2015, when Craig's counsel forwarded SSC's infringement contentions to Enplas' counsel.  Upon receipt of SSC's contentions, Enplas performed its own internal review of the photographs contained in the SSC contentions, concluding that the accused lenses were Enplas lenses.[3]

_____

[3]    The particular lenses shown in SSC's infringement contentions bear the Enplas model number marking "#9854". (Ex. C at 2-3; Ex. F at 1).  SSC is well aware of Enplas' numbering conventions from both its own prior purchases as well as the information provided in discovery in the California

It is readily apparent that SSC intentionally concealed the existence of the California Litigation.  Despite having identified the "markings" on the accused lenses in the co-filed Curtis complaint,[4] the Craig complaint is entirely silent with respect to the markings on the Enplas lenses accused in this case.  Any argument by SSC that it somehow overlooked the lens markings is belied by the fact that the infringement contentions in this case are nearly identical to those in the California Litigation.  (*Compare* Ex. F (Florida '554 patent claim chart), *with* Ex. G (California '554 patent claim chart)); (*compare* Ex. H (Florida '209 patent claim chart), *with* Ex. I (California '209 patent claim chart)).

### E.    This Motion.

Enplas moves to intervene pursuant to Fed. R. Civ. P. 24(a)(2) and (b)(1)(B) and to stay the portion of this litigation that is directed to the two patents and the products already at issue in the first-filed California Litigation.[5]  Enplas is best placed to defend the SSC claims that turn on Enplas' lenses.  Enplas can join the litigation, if the litigation is not stayed, without any adjustments to the existing schedule.  Enplas has already provided detailed invalidity contentions to SSC in the first-filed California Litigation; document production has been substantially completed in the first-filed California Litigation; and the parties have fully developed and argued their claim construction positions in that first-filed California Litigation.

Craig fully supports Enplas' motions to intervene and to stay.

_____

Litigation.  What is not shown in the photos are the other marking on the lens, which should include the Enplas trademark.

[4]    (*See* Ex. E, ¶ 64 ("lenses marked with the following markings:  'AB21,' 'AB42,' 'AB100,' '30V1,' 'K31,' 'R14,' and 'Q56'")).

[5]    Enplas is aware that SSC has asserted three other, unrelated patents in this litigation.  Enplas' products are not implicated by those patents, and Enplas does not seek to stay or to participate in the litigation of those patents.

### III.   The Court Should Grant Enplas' Motion to Intervene.
####    A.   Intervention as of Right – The Legal Standard.

Fed. R. Civ. P. 24(a)(2) provides that a court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."   The Eleventh Circuit[6] applies the following test, which hews closely to the requirements of the Rule:

> A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

*Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (granting intervention as of right).

####    B.   Permissive Intervention – The Legal Standard.

Pursuant to Fed. R. Civ. P. 24(b)(1)(B), a court, on timely motion, may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact."   This is known as "permissive intervention," and permits intervention, in the Court's discretion, where the intervenor has not met the standard for intervention of right under Rule 24(a)(2).   *Stone v. First Union Corp.*, 371 F.3d 1305, 1308 (11th Cir. 2004) (court has discretion to grant permissive intervention).

---

[6]   Although this is a patent case, regional law applies to procedural issues, including intervention under Rule 24.   *Ericsson Inc. v. InterDigital Commc'ns Corp.*, 418 F.3d 1217, 1220-21 (Fed. Cir. 2005).

C.   **Application of the Rules in Patent Cases.**

Because few appellate decisions apply Rule 24 in the patent infringement context, application of the Rule by other district courts where the accused products were manufactured by (or included components manufactured by) the third party intervenor are illustrative.  For example, in *Intellectual Ventures I LLC v. AT&T Mobility LLC*, the District of Delaware granted a third party's motion to intervene as of right where the third party sought "to intervene in two . . . actions . . . based on its manufacture of products for [the defendants in those actions] that [the plaintiff] claims infringe four of [its] patents . . . ." C.A. No. 12-193-LPS, 2014 WL 4445953, at *1 (D. Del. Sept. 8, 2014).  The court found the intervention was appropriate in light of the interest in the accused products and the "superior technical knowledge" possessed by the manufacturer:

> The Court finds Interven[o]rs' motions are timely based on the early, pre-*Markman* stage of the proceedings and, additionally, the immediacy with which Intervenors filed their motions. Further, intervention is necessary to enable Intervenors to protect their interest in products which Intervenors manufacture for Defendants, an interest put at risk by the litigation as Plaintiffs accuse these products of infringement. Additionally, Intervenors, as designers and manufacturers of those products, possess superior technical knowledge of how the accused devices and their components are configured and operate. Finally, intervention will ensure adequate representation of Intervenors' interests; while Defendants maintain similar interests as Intervenors, they are not as well-situated to understand and defend Intervenors' products. Therefore, all four requirements strongly favor intervention.

*Id.* at *2. The court rejected the plaintiff's argument that "a proposed intervenor must show an indemnity obligation."  *Id.* at *3.  Instead, a proposed "intervenor must demonstrate 'an interest relating to the property or transaction which is the subject of the action.'" *Id.* (citation omitted). The proposed intervenors had "done just that by demonstrating their interest in the very devices accused of infringement." *Id.*  The Delaware judge further found "that permissive intervention is appropriate under Rule 24(b)." *Id.*

In another case similar to this one, a third party sought "to intervene because it is the original manufacturer of LCDS said to be the infringing component in some of the defendants' consumer electronics." *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, C.A. No. 04-1337-KAJ, 2005 WL 2465898 at *1 (D. Del. May 18, 2005). The court granted the motion to intervene "because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product." *Id.* at *4. Regarding the factors for intervention as of right, the court ruled as follows:

> [Intervenor's] motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known. Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation. *Id.*

Other courts have reached similar conclusions. *See, e.g., Lexington Luminance LLC v. Google, Inc.*, C.A. No. 12-12218-GAO, 2014 WL 172203, at *1 (D. Mass. Jan. 16, 2014) (granting third-party LED manufacturer's motion "to intervene as a defendant on the basis that it supplies at least some of the LEDs in the [accused product]"; noting that "[m]any district courts have allowed manufacturers and suppliers to intervene in actions where their products were the subject of the suit" and that "the accused products [in these cases] contained products manufactured or supplied by the party seeking intervention"; granting the motion on the grounds that "the sole accused component of the [accused product] is the LED manufactured by [the third party]" and the third party's indemnification obligation); *Select Retrieval, LLC v. L.L. Bean, Inc.*, C.A. No. 2:12-cv-00003-NT, 2013 WL 1099754 at *2-4 (D. Me. Mar. 15, 2013) (granting third-party Adobe's motion to intervene and stay patent-infringement suit against its customer in favor of co-pending declaratory-judgment action brought by Adobe in another jurisdiction; noting that Adobe had "a substantial interest" because Adobe's technology "is alleged to infringe [the] patent"; further

noting that "Adobe, as the developer and marketer of the allegedly infringing technology, has more at stake than . . . a mere customer of Adobe" and that "Adobe should be allowed to protect its own interests and defend its customers").

**D.      Enplas Meets the Standard for Intervention as of Right.**

As set forth below, Enplas meets each factor for intervention as of right: (1) its motion is timely, (2) it has an interest in the subject matter of this litigation, (3) the resolution of this litigation will impact its interests, and (4) the current defendant cannot adequately protect Enplas' interests. *See Chiles*, 865 F.2d at 1213.

**1.      Enplas' Motion Is Timely.**

Enplas meets the first factor of timeliness.  Courts in this Circuit apply the following factors in determining whether a motion to intervene is timely:

> [1] the length of time during which the [intervenor] knew or reasonably should have known of [its] interest in the case before moving to intervene,
>
> [2] the extent of prejudice to the existing parties as a result of the [intervenor's] failure to move for intervention as soon as [it] knew or reasonably should have known of [its] interest,
>
> [3] the extent of prejudice to the [intervenor] if [its] motion is denied, and
>
> [4] the existence of unusual circumstances militating either for or against a determination that [its] motion was timely.

*Chiles*, 865 F.2d at 1213.  In *Chiles*, the court found that a motion to intervene filed seven months after the original complaint and before any discovery had begun was timely filed.  *Id.*  The *Chiles* court cited favorably to a Fifth Circuit case, in which a motion to intervene filed over a year after the complaint was held to be timely because "there had been no legally significant proceedings other than the completion of discovery and [the] motion would not cause any delay in the process of the overall litigation."  *Id.* (citing *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125-26 (5th Cir. 1970)).

Enplas' motion is timely, coming within four weeks of learning that the Craig products accused of infringement might contain Enplas lenses and two weeks after confirming that the Craig products contain Enplas lenses. Put another way, Enplas moved as expeditiously and reasonably as possible. Craig consents to the motion.

SSC cannot claim to be prejudiced by intervention. The complaint was filed less than seven months ago, and the only substantive proceedings that have occurred have been the exchange of contentions. Fact discovery does not close until September 3, 2015, and opening claim construction briefs are not due until May 20, 2015. (ECF No. 30 at 2). Due to the proceedings in California between Enplas and SSC, Enplas is already familiar with the patents and SSC's theories of infringement. And SSC is already familiar with the Enplas lenses; SSC's infringement contentions in this case mirror SSC's contentions in the California Litigation.

Conversely, there will be substantial prejudice to Enplas (and to Craig) if this motion is denied. Enplas will be forced to sit on the sidelines as issues of infringement are decided with respect to products incorporating Enplas lenses, potentially damaging the market for Enplas' products as well as Enplas' business prospects. SSC's allegations are directed to the structure and function of the Enplas lenses and the products in which they are used, but Craig does not know about the inner workings of its products, much less the technology behind Enplas' lenses, and was not even aware that an Enplas lens was incorporated into any of its products.

Finally, *SSC is the only party* that could have known that the accused Craig products contained Enplas lenses. Craig could not have known because it does not have knowledge about the inner workings of the televisions it sells, whereas Enplas could not have known and did not know, prior to being informed by Craig two weeks ago, that the products sold by Craig included Enplas lenses because of the number of intermediaries in the supply chain. SSC, moreover, never

disclosed that its allegations here overlapped with the allegations presented in the earlier-filed California Litigation.  Thus, Enplas' motion to intervene is timely.

### 2. Enplas Has a Significant Interest in this Litigation.

The second factor is met where the movant has an interest that is "direct, substantial, legally protectable interest in the proceeding." *Chiles*, 865 F.2d at 1213.[7]  Enplas manufactures lenses that are incorporated into the products sold by Craig; these lenses are the focus of SSC's infringement contentions for two of the patents-in-suit.  Enplas' interest in these products is direct and substantial, given that SSC's infringement contentions focus on the lenses manufactured by Enplas that are, at some point, incorporated into Craig's products.  Enplas has a legally protectable interest in establishing that its lenses, and the products into which they are incorporated, do not infringe the '554 and '209 patents.  Indeed, a finding that Enplas lenses used by Craig infringe either of the patents is likely to create a significant chill over Enplas' business in this highly competitive market.  Thus, as in the cases discussed above, the interest of Enplas in products incorporating its lenses is substantial and entitled to protection; Enplas not only "has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest." *Honeywell*, 2005 WL 2465898, at *4.

### 3. Enplas' Interests Will Be Harmed Absent Intervention.

The third factor examines whether the intervener's interest could be practically disadvantaged if the case continues without the would-be intervenor as a party.  *Chiles*, 865 F.2d at 1214.  There is a real possibility that the disposition of this action without Enplas could impair

---

[7]    The Supreme Court has observed that a manufacturer's intervention as a party defendant in a lawsuit by a patent holder against an infringing user of the manufacturer's product was "necessary for the protection of [the manufacturer's] interest." *Chandler & Price Co. v. Brandtjen & Kluge*, 296 U.S. 53, 55 (1935).

Enplas' ability to protect its interest in maintaining the market for its products and ensuring that no finding of infringement is attached, even indirectly, to Enplas' lenses. Enplas' substantial interest in maintaining demand for its products and operating a profitable business is, therefore, "put at risk by the litigation as Plaintiff[] accuse[s] these products of infringement," *Intellectual Ventures*, 2014 WL 4445953, at \*2, and Enplas "can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known." *Honeywell*, 2005 WL 2465898, at \*4.

### 4.    Craig Cannot Adequately Represent Enplas' Interests.

The fourth factor, that the interest is represented inadequately by the existing parties to the suit, requires a "minimal" showing "that representation of [one's] interest 'may be' inadequate." *Chiles*, 865 F.2d at 1214 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (granting intervention as of right)). Enplas needs to show only the possibility that its interests may be different than Craig's. *Id.* at 1214-15.

In this case, Craig cannot adequately represent Enplas' interest in the subject matter of the suit because Craig has no apparent knowledge with respect to the Enplas lenses that are the subject of SSC's infringement contentions. Conversely, Enplas employs technical experts regarding lens technology and has deep and expansive knowledge of the Enplas lenses in the accused products. Enplas' lens technology is the subject of numerous patents, and accordingly, Enplas is acutely aware of the relevant prior art—placing it in a far better position than Craig to raise invalidity arguments with respect to the two overlapping patents.

Enplas, as the manufacturer of the accused lenses, "possess[es] superior technical knowledge of how the accused devices and their components are configured and operate," and although Craig surely desires to avoid an adverse verdict, Craig is not be "as well-situated to understand and defend" Enplas' products as Enplas itself. *Intellectual Ventures*, 2014 WL

4445953, at *2.   Enplas is "uniquely situated to understand and defend its own product," *Honeywell*, 2005 WL 2465898, at *4, and therefore meets the "minimal" standard for showing inadequate representation.  *See also* James W. Moore, *Moore's Federal Practice* § 24.03[5][a] (3d ed. 2014) ("[C]ourts look favorably on intervention petitions offering a unique perspective" such as technical expertise.).

### E.       Enplas Meets the Standard for Permissive Intervention.

As established above, Enplas' motion is timely and satisfies each of the applicable factors required for intervention as of right.  Nonetheless, even if the Court were to conclude otherwise, under Fed. R. Civ. P. 24(b)(1)(B), the court may permit intervention on a timely motion if it finds that Enplas "has a claim or defense that shares with the main action a common question of law or fact."  As is clear from the argument regarding intervention as of right, *see supra* Part III.D., Enplas has both claims and defenses that have questions of law and fact in common with this action.  For example, Enplas has multiple defenses (and possibly counterclaims) of non-infringement and invalidity in response to SSC's infringement contentions with respect to the '554 and '209 patents.

With respect to those non-infringement and invalidity defenses, Enplas has a unique perspective and technical expertise that Craig does not have and, indeed, could not possibly have. This weighs heavily in favor of permissive joinder.  *See* Moore, *supra*, § 24.10[2][b] ("Courts are particularly willing to grant permissive intervention in complex litigation when the movant may be able to provide unique input that may be of value to the court.").  There are also likely to be substantially overlapping factual and legal inquiries in connection with other issues, such as any alleged damages.

Rule 24 requires, or at a minimum permits, intervention in this case.  Enplas' intervention in this case will simplify the case because it will permit resolution of the issues with all interested parties present and prepared to directly address the allegations regarding the accused products.

Thus, granting Enplas' motion will promote and serve the purpose of Rule 24 and the Federal Rules in general.  *See* Moore, *supra*, § 24.03[5][b][i] ("The most obvious benefits of intervention in general are efficiency and consistency resulting from resolving related issues in a single proceeding."); Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.").

## IV.   SSC's Conduct in Initiating Parallel Litigation Warrants a Stay.
### A.      The First-Filed Rule.

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit."  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).  The first-filed rule "provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case."  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982)); *see also Leviton Mfg. Co. v. Interline Brands, Inc.*, C.A. No. 3:05-cv-123-J-33MCR, 2006 WL 2523137, at *2 (M.D. Fla. Aug. 30, 2006) ("Pursuant to the first filed rule, when similar cases are filed, while not mechanical, preference is given, either in the form of stays, transfers, or injunctions, to the suit filed first in time.").

The first-filed rule "rests on principles of comity and sound judicial administration" and serves "to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court."  *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603-04 (5th Cir.1999).  In this Circuit, "the party objecting to jurisdiction in the first-filed forum

[must] carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel*, 430 F.3d at 1135.

Generally, "[w]hen considering such a stay, courts consider several factors, including (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues and streamline the trial, (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Baxa Corp. v. Forhealth Techs., Inc.*, C.A. No. 6:06-cv-0353-Orl-19JGG, 2006 WL 4756455, at *1 (M.D. Fla. May 5, 2006).

> **B.      First-Filed Manufacturer Cases Have
> Precedence over Later-Filed Customer Suits.**

Where there is a first-filed action involving the alleged infringement by a manufacturer, that case should be given precedence over later-filed suits against customers, even where the first-filed action is a declaratory judgment action against the patentee. *See, e.g., Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirming injunction of customer suit pending resolution of the suit against manufacturer); *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938-39 (Fed. Cir. 1993) (reversing dismissal of defendant from first-filed action in favor of second-filed action and stating that "[w]hen the [first-filed] declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action").

Courts in this Circuit regularly stay second-filed cases against customers where a suit involving the manufacturer is pending elsewhere. *See Leviton*, 2006 WL 2523137, at *3-4 (staying later-filed customer patent infringement suit pending outcome of first-filed manufacturer suit on same patents); *Wehr Corp. v. Commercial Const. Corp.*, 464 F. Supp. 676, 677 (S.D. Fla. 1979) (staying case "[i]n view of the fact that the present suit against the product user was filed

subsequent to the filing of an identical suit against the product manufacturer"); *see also Gibson Guitar Corp. v. Wal-Mart Stores, Inc.*, C.A. No. 3:08cv0279, 2008 WL 3472181, at *5-7 (M.D. Tenn. Aug. 8, 2008) (staying later-filed customer action in favor of first-filed declaratory judgment action by manufacturer despite lack of identity of products and parties because "[t]he threshold question in both cases is the validity of the patent.").

C.      **The California Litigation Is the First-Filed Action.**

Enplas filed its declaratory judgment action against SSC in the Northern District of California on October 29, 2013.  SSC did not file suit against Craig until July 22, 2014, almost nine months later.

The anticipatory suit exception does not apply here.  The issue underlying the anticipatory suit exception "'is whether the [first-filed] action was filed in apparent anticipation of the other pending proceeding.'"  *Manuel*, 430 F.3d at 1135 (citing *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982)).  Enplas could not reasonably have anticipated that nearly nine months after it filed suit against SSC, SSC would file suit against Craig, especially given the fact that neither Craig nor Enplas was aware of the incorporation of Enplas lenses in the accused Craig products.  Because the California Litigation was not filed in anticipation of this action, the anticipatory suit exception does not defeat the preference for the first-filed California Litigation.

D.      **The First-Filed Rule Mandates a Stay.**

There is substantial overlap of issues and parties.  Here and in California, SSC asserts infringement of the '209 and '554 patents by products containing Enplas lenses.  In both cases, SSC asserts that the two patents are valid.  The first-filed rule thus applies.  *See Global Innovation Tech. Holdings, LLC v. Acer Am. Corp.*, 634 F. Supp. 2d 1346, 1348-49 (S.D. Fla. 2009) (applying first-filed rule where defendants in second-filed suit were resellers of products developed by defendants in first-filed suit involving the same patents and therefore "the cases will involve

overlapping witnesses, prior art relevant to patent validity, and especially overlapping claim construction issues."); *Leviton*, 2006 WL 2523137, at *3-4 (staying later-filed patent suit against customer in favor of pending suit against manufacturer despite non-identity of parties).

This case closely parallels *Gibson Guitar*, where the district court stayed a suit filed by the patentee against retailers of allegedly infringing products where the manufacturer had already filed a declaratory judgment action seeking a declaration of invalidity, although the parties and accused products were not identical in the two cases, on the grounds that "[t]he threshold question in both cases is the validity of the patent." 2008 WL 3472181, at *6. The situation here is the same: although not all accused products in this case are at issue in the California Litigation, and although Craig is not a party to that case, the commonality of the '209 and the '554 patents—and the resulting substantial overlap in infringement and validity issues—means that the California court should be permitted to resolve those issues in the first instance.

The fact that SSC has asserted additional patents here does not preclude the application of the first-filed rule. *See Am. Household Products, Inc. v. Evans Mfg., Inc.*, 139 F. Supp. 2d 1235, 1242 (N.D. Ala. 2001) (applying first-filed rule where different, but related, patents were involved in two cases at issue); *Actsoft, Inc. v. Alcohol Monitoring Sys., Inc.*, C.A. No. 8:08-cv-00628-T-23-EAJ, 2008 WL 2266254, at *1-2 (M.D. Fla. June 3, 2008) (applying first-filed rule where later-filed case involved non-patent claim that had overlapping issues of proof with patent claim in first-filed case); *Furminator, Inc. v. Munchkin, Inc.*, C.A. No. 4:08CV00367 ERW, 2009 WL 2957952, at *2 (E.D. Mo. Sept. 10, 2009) (applying first-filed rule where one out of five patents overlapped); *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D. Cal. 1998) (same). If it did, parties could subvert the first-filed rule by simply adding one additional patent

or issue to a later-filed case.  Enplas is not, in any event, seeking to stay this action in its entirety but only to the extent it overlaps with the earlier-filed California Litigation.

Although the customer suit exception – which favors later-filed manufacturer infringement suits over earlier-filed infringement suits against customers – technically does not apply here, because the manufacturer suit in California *is* the first-filed suit,[8] the reasoning underlying the exception supports staying the patent claims here.  A stay pending the outcome of the California Litigation would serve "the guiding principles in the customer suit exception cases [of] efficiency and judicial economy."  *Spread Spectrum Screening LLC v. Eastman Kodak Co.,* 657 F.3d 1349, 1357 (Fed. Cir. 2011) (citation omitted).

A stay also makes sense in light of "the manufacturer's presumed greater interest in defending its actions against charges of patent infringement."  *Id.* (quoting *Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989)).  Here, Enplas has a greater interest in defending its product than Craig, and Enplas' deeper understanding of its own lenses (which are the central focus of SSC's infringement allegations related to the '209 and '554 Patents) militates in favor of granting a partial stay in this matter.  Not only was the California Litigation first-filed, it also involves the real parties in interest rather than mere resellers of products containing Enplas lenses.

E.    **The Key Factors Favor a Stay.**
   1.    **SSC Will Suffer No Prejudice.**

As set forth above, SSC will suffer no prejudice if this Court denies Enplas' motion to stay. It will be able to pursue its claims for infringement in the California Litigation.  Meanwhile, if this

---

[8]    *Leviton,* 2006 WL 2523137, at *2 ("Here, [patentee] filed [the manufacturer suit] well before the present [customer] suit, thus, the Court need not resort to the customer suit exception. Rather, the Court simply follows the precepts of the first filed rule."); *see also Gibson,* 2008 WL 3472181, at *7 (finding no need to apply customer suit exception where manufacturer action filed first).

case proceeds, Enplas will be forced to defend its products against the same patents, asserted by the same party (SSC), in two federal district courts.

## 2. A Stay Will Streamline this Case.

If this Court stays proceedings with respect to the '209 and '554 patents, issues of infringement and invalidity can be litigated and resolved in California. If those issues are decided in California, SSC will be precluded from arguing them again in this case. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349-50 (1971); *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1382 (Fed. Cir. 2013).

Absent a stay, there exists a real and significant risk of inconsistent claim construction rulings, inconsistent findings of fact, inconsistent judgments with respect to invalidity and infringement, and even the potential for a legally impermissible double recovery by SSC for the same infringement. The existence of multiple proceedings will add complexity to both cases as the parties and the courts will be forced to analyze the impact of each submission and ruling on the co-pending litigation.

## 3. A Stay Will Reduce the Burden on the Court and the Parties.

Judicial economy strongly favors a stay. A stay in this action will avoid duplication of efforts regarding issues of infringement and validity with respect to the '209 and '554 patents. These issues are already being litigated in the California Litigation, which has proceeded well beyond the procedural schedule in this case. In California, Enplas and SSC have exchanged several rounds of contentions, exchanged written discovery, produced documents, and briefed and argued claim construction issues, none of which has yet occurred in this case.

## V. Conclusion

For the above-stated reasons, Enplas' motions to intervene and stay should be granted.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues.  Defendant Craig Electronic, Inc. does not oppose the relief requested herein.  Plaintiff SSC did not confirm whether it would oppose the relief requested.


Dated: February 20, 2015                              Respectfully Submitted:

                                                       By: *s*/Alan M. Weisberg
                                                       Alan M. Weisberg, Esq.
                                                       aweisberg@cwiplaw.com
                                                       Florida Bar Number: 479349
                                                       Garrett A. Barten, Esq.
                                                       gbarten@cwiplaw.com.
                                                       Florida Bar Number: 55371
                                                       **CHRISTOPHER & WEISBERG, P.A.**
                                                       200 East Las Olas Boulevard, Suite 2040
                                                       Fort Lauderdale, Florida 33301
                                                       (954) 828-1488 (Telephone)
                                                       (954) 828-9122 (Facsimile)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified therein.

By:  s/ Micaela Weiss
Micaela Weiss

### SERVICE LIST
Case No. 1:14-CV-22728-RNS

Edward M. Mullins (Fla. Bar No. 863920)
emullins@astidavis.com
Regan N. Kruse (Fla. Bar No. 84404)
rkruse@astidavis.com
**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
1001 Brickell Bay Drive, Ninth Floor
Miami, Florida 33131
Tel: (305) 372-8282
Fax: (305) 372-8202
***Via CM/ECF***

David C. Radulescu, Ph.D.*
david@radulescullp.com
Tigran Vardanian*
tigran@radulescullp.com
Robin M. Davis*
robin@radulescullp.com
Michael D. Sadowitz*
mike@radulescullp.com
**RADULESCU LLP**
136 Madison Ave., 5th Floor
New York, New York 10016
Tel: (646) 502-5950
Fax: (646) 502-5959
***Via CM/ECF***

*Admitted pro hac vice
*Attorneys for Plaintiff/Counter Defendant, Seoul Semiconductor Co., Ltd.*

Ury Fischer
ufischer@lottfischer.com
Adam Diamond
adiamond@lottfischer.com
**Lott & Fischer**
355 Alhambra Circle
Suite 1100
Coral Gables, FL 33134-1098
305-448-7089
Fax: 305-446-6191
***<u>Via CM/ECF</u>***

*Attorneys for Defendant/Counter Claimant, Craig Electronics, Inc.*